647 So.2d 569 (1994)
Ricardo CAMPBELL, Plaintiff-Appellant,
v.
NATIONAL UNION FIRE INS. CO., et al., Defendants-Appellees.
No. 92-592.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
*570 Jarvis Jerome Claiborne, Opelousas, for Ricardo Campbell.
George Davis Ernest III, Thomas H. Morrow, Lafayette, for National Union Fire Ins. Co., et al.
Robert Michael Kallam, Lafayette, for LIGA.
Before DOUCET, YELVERTON, THIBODEAUX, SAUNDERS and WOODARD, JJ.
SAUNDERS, Judge.
Plaintiff in this consolidated case appeals the dismissal of his claim arising from an intersectional collision.
On June 26, 1990, Joseph Chapman, a minor, was driving his mother's car south on Dupre Street in Ville Platte, Louisiana. Ricardo *571 Campbell and Bryant Riggs were passengers. Chapman was not licensed to drive. All three testified that as they approached the traffic signal at the intersection of Dupre and LaSalle Streets, they saw the signal turn green on their side. They further testified that they saw the vehicle driven by A.L. Landreneau, which had been traveling west on LaSalle, come to a full stop at the signal, then pull out into the intersection resulting in the accident made the basis of this suit.
Landreneau was driving a vehicle owned by his employer, Ardoin's Funeral Home (Ardoin's). Landreneau stated that as he approached the signal on LaSalle Street, it changed from red to green and was green as he entered the intersection.
Clinton Reed testified that he lives in a four-plex at the southwest corner of LaSalle and Dupre. He had just closed his door behind him and taken perhaps two steps away when he heard the squeal of tires. As he turned to put his hand on the door knob, he heard the crunch of the two cars colliding. He immediately exited his residence and saw that the traffic signal was red facing south on Dupre, opposite the Chapman vehicle.
As a result of the accident, Campbell filed suit against Ardoin's Funeral Home and its insurer, National Union Fire Insurance Company (National Union); Georgia Chapman, the mother of Joseph Chapman, and her insurer, Liberty Lloyd's Insurance Company (Liberty Lloyds); and the City of Ville Platte. Lorena Riggs, on behalf of her minor son, Bryant Riggs, filed suit against the same defendants except that she did not name the City of Ville Platte as a defendant. The matters were consolidated for trial.
The City of Ville Platte was voluntarily dismissed from the suit by Campbell.
A trial on the merits was held on March 31, 1992. After plaintiff rested his case, Liberty Lloyds was dismissed on the finding that the policy did not afford coverage in this matter. Additionally, at the conclusion of trial, the trial judge recognized an exception of no cause of action as to Georgia Chapman and dismissed her from the suit. Finally, the trial judge dismissed the claims against Ardoin's and National Union, finding no negligence on the part of Ardoin's employee, A.L. Landreneau. Campbell appeals. His appeal has been consolidated with that of Rigg's.

RECUSAL
Plaintiff argues that the trial judge was biased in favor of Ardoin's and should have recused himself.
LSA-C.C.P. art. 154 states that:
A party desiring to recuse a judge of a district court shall file a written motion therefor assigning the ground for recusation. This motion shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusation thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment. If a valid ground for recusation is set forth in the motion, the judge shall either recuse himself, or refer the motion to another judge or a judge ad hoc, as provided in Articles 155 and 156, for a hearing.
Plaintiff did not move for recusal. Since no motion was made, this issue may not be considered on appeal. Bergeron v. Illinois Cent. Gulf R. Co., 402 So.2d 184, 186 (La.App. 1st Cir.), writ denied, 404 So.2d 1260 (La.1981).

LIABILITY OF ARDOIN'S
Plaintiff next argues that the trial court should not have credited the testimony of A.L. Landreneau and Clinton Reed in deciding to relieve Ardoin's of liability.
As the Louisiana Supreme Court state in Rosell v. ESCO, 549 So.2d 840, 844-845 (La. 1989):
"When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.
* * * * * *
"Where documents or objective evidence so contradict the witness's story, or the *572 story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.
* * * * * *
"But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong."
The testimony of the passengers of the Chapman vehicle is in conflict with that of Landreneau's. Each said the light was green on his side. On the face of the cold record, there is nothing to suggest that any one of those testifying was inherently more credible than any other. In light of the dictates of Rosell, supra, we cannot say that the trial judge's credibility evaluation was unsupported by the record and detect no error in his finding that Ardoin's employee, A.L. Landreneau, was not at fault in the accident. As a result, we affirm Ardoin's dismissal.

CHAPMAN'S INSURANCE COVERAGE
Plaintiff further argues that the trial judge erred in finding that the policy of liability insurance issued to Georgia Chapman by Liberty Lloyds did not provide coverage for this accident.
We are unable to evaluate the policy language other than that contained on the declaration sheet, as the record on appeal contains only the declaration sheet and application from the Liberty Lloyds policy rather than the entire policy. The declaration sheet contains the statement that "Coverage is not afforded to anyone living in the household and not listed in the application." The application lists only Georgia Chapman.
Ordinarily, when the entire policy is not contained in the record, the court on appeal will presume that nothing contained therein is contradictory to the trial judge's coverage determination. See Smith v. Lewis, 597 So.2d 1267 (La.App. 3d Cir.1992). Here the trial judge determined that the policy excluded coverage of Joseph Chapman. However, the Smith presumption must give way when the law unquestionably mandates coverage. Our question therefore becomes whether the Smith presumption was rendered inoperable by the law in effect when the accident occurred.
LSA-R.S. 32:900, our state's mandatory liability law, provides:
Sec. 900. "Motor Vehicle Liability Policy" defined:
A. A "Motor Vehicle Liability Policy" as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance ... by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
B. Such owner's policy of liability insurance:
. . . .
(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss ... subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:
(a) Ten thousand dollars because of bodily injury to or death of one person in any one accident, and,
(b) Subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and
(c) Ten thousand dollars because of bodily injury to or destruction of property of others in any one accident.
. . . .
F. Every motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:
(1) The liability of the insurance carrier with respect to the insurance required by this Chapter shall become absolute whenever injury or damage covered by *573 said motor vehicle liability policy occurs; said policy may not be cancelled or annulled as to such liability by an agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy;
. . . .
(4)The policy, the written application therefor, if any, and any rider or endorsement which does not conflict with the provisions of the Chapter shall constitute the entire contract between the parties.
....
K. Any binder issued pending the issuance of a motor vehicle liability policy shall be deemed to fulfill the requirements for such a policy.
L. Notwithstanding the provisions of Paragraph B(2) of this Section, an insurer and an insured may by written agreement exclude from coverage any named person who is a resident of the same household as the named insured.
(emphasis added.)
LSA-R.S. 32:900(L) was added by Acts 1992, No. 979, § 1. Had this accident occurred subsequent to its enactment, the question of coverage we now address would turn on the language contained in the policy. See McKenzie & Johnson, 15 Louisiana Civil Law Treatise, § 52. This accident occurred in 1990, however; therefore, the substantive law in existence at that time governs.
Before the effective date of LSA-R.S. 32:900(L), the circuits were apparently divided on the question of whether coverage was required for members of the household not listed in the policy. Compare, e.g., State Farm v. Casualty Reciprocal Exch., 600 So.2d 106, 109 (La.App.2d Cir.1992) (there is no requirement that the motor vehicle liability policy cover family members regardless of permission), with Touchet v. Fireman's Ins. Co. of Newark, N.J., 159 So.2d 753 (La.App. 3d Cir.), writ denied, 245 La. 963, 162 So.2d 13 (1964), wherein we noted that the law was "well settled that a resident of the same household is always insured with respect to the covered auto, but a third party only becomes insured if driving the insured auto with permission of the named insured." (Emphasis added.) More recently, this circuit, in Lewis v. Narcisse, 595 So.2d 329 (La.App.3d Cir.1992), held invalid a policy excluding "unlisted household member" under LSA-R.S. 32:900(B)(2) due to the owner's having given the driver permission. Cf., State Farm v. Casualty Reciprocal Exch., supra, 600 So.2d at 109, (family members excluded and no permission given).[1]
The accident in question having occurred before the legislation's effective date, resolution of Liberty Lloyds' coverage issue turns on whether the minor, Joseph Chapman, had his mother's permission to use the vehicle, because the rule of this circuit prior to LSA-R.S. 32:900(L) was that omnibus coverage would extend to any driver, including unlisted household members, who drive with the permission of the owner.
Our review of the evidence suggests that the minor had the mother's permission to use the vehicle. He testified that his mother had given him permission to use the vehicle, either to have it washed or to put some air in a partially deflated tire, and that it was not the first time she let the sixteen year old borrow the car. Accordingly, we reverse the trial court's dismissal of Liberty Lloyd's Insurance Company on the coverage issue and find that the minor son had his *574 mother's permission to borrow the vehicle on the day in question.
Liberty Lloyds was dismissed at the close of plaintiff's case. The trial court did not hear evidence as to Liberty Lloyd's alternate coverage defense, that the policy expired the day before the accident in question. Therefore, a remand is warranted for this purpose and for a trial on the merits should one become necessary.

NO CAUSE OF ACTION
Finally, plaintiff complains that the trial court incorrectly found that his petition failed to state a cause of action against Georgia Chapman. Alternatively, he argues that even if the petition did not state a cause of action, he should have been given time to amend.
In considering an exception of no cause of action:
"Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. Kuebler v. Martin, 578 So.2d 113 (La.1991). When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Id. The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition and is triable on the face of the papers; for the purpose of determining the issues raised by this exception, the well pleaded facts in the petition and any annexed documents must be accepted as true. Id."

Sevarg Co., Inc. v. Energy Drilling Co., 591 So.2d 1278, 1280-81 (La.App. 3d Cir.1991), writ denied, 595 So.2d 662 (La.1992).
Even under this liberal standard, we cannot say that the plaintiff's petition states a cause of action against Mrs. Chapman. Reading the petition, it is not possible to ascertain in what capacity Mrs. Chapman is being sued, whether on her own behalf or vicariously for the actions of her minor son. Nor can we say that the testimony at trial effected an expansion of the pleadings. However, the trial court should have allowed the plaintiff time to amend his petition. We remand this case so that this may be done.
Accordingly, we reverse the trial court's judgment dismissing Liberty Lloyd's Insurance Company and the claims against Georgia Chapman. In all other respects, the judgment of the trial court is affirmed. Apportionment of costs to await resolution of these proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
DOUCET and WOODARD, JJ., dissent with reasons.
DOUCET, Judge, dissenting.
I respectfully dissent from the majority's decision to reverse the trial court's judgment dismissing Liberty Lloyd's. The majority, relying on Lewis v. Narcisse, 595 So.2d 329 (La.App.3d Cir.1992), finds the policy of insurance in this case does in fact cover the defendant driver, Joseph Chapman, in spite of the fact that he was excluded as a household member not listed on the policy application sheet. The Lewis case, however, turned on the definition of and difference between a motor vehicle liability insurance policy and an automobile liability insurance policy. See Hearty v. Harris, 574 So.2d 1234, 1239 (La. 1991). However, since we do not have the policy before us, we cannot make any conclusion as to the type of policy purchased by Mrs. Chapman; and in the absence of such evidence, we must presume the trial judge's conclusions to be properly supported by evidence. Smith v. Lewis, 597 So.2d 1267 (La. App. 3d Cir.1992).
Further, I do not believe remand on this issue is proper in as much as plaintiffs have had their opportunity to make their case. They failed to present any evidence either of the contents of the policy or with regard to Joseph's permission to use his mother's automobile. Those issues are not new. They were as vital to their ability to collect at trial as now. We should not allow them to re-try their case simply because they failed on the first attempt.
Accordingly, I respectfully dissent.
*575 WOODARD, Judge, dissenting.
The majority concludes that the Louisiana Compulsory Motor Vehicle Liability Security Law incontestably extends the coverage of every automobile insurance policy to include unlicensed members of the policyholder's household whom the policyholder permits to drive the insured automobile. I respectfully disagree, at least under the facts presented in the case sub judice. I believe that in determining that Joseph Chapman is covered by his mother's insurance policy with Liberty Lloyds because she permitted him to drive her automobile, the majority has improperly ignored Joseph's lack of legal permission to drive.
Automobile insurance companies may reasonably be required to cover licensed drivers living in the policyholder's household, because it is clearly foreseeable that they will drive the insured's car, and enforcement of insurance policies in favor of innocent third parties is a fundamental aspect of Louisiana public policy. Insurers may take into account the driving record and other indicia of the insurability of these other drivers when determining the policyholder's premiums.
However, it is also the public policy of this state to encourage enforcement of the law concerning the operation of motor vehicles. Phillips v. New Amsterdam Casualty Co, 193 La. 314, 190 So. 565, 568 (1939). Moreover, it is improper to require insurance companies to cover drivers who are explicitly excluded from coverage, and whom the insurance companies may reasonably expect not to take the wheel because doing so directly contravenes Louisiana law. The enactment of La.R.S. § 32:900(L), providing that household members may be excluded from coverage, indicates that the public policy mandating coverage may be overcome by contractual means. In any event, underinsured motorist coverage is widely available, so that those who are concerned about the risk of injury caused by an unlicensed motorist can protect themselves.
As a result of the decision reached by the majority, insurers will be forced to increase the premiums of all policyholders with whom children are living, in order to take into account the risk that they will be forced to pay for damage caused by these unlicensed drivers. It will become necessary to treat all children as potential drivers of family vehicles, and insuring these drivers will be expensive because they are likely to be young, untrained, and inexperienced, and therefore accident-prone.
The policy considerations on both sides of this issue are great. For the foregoing reasons, however, I would affirm the decision of the trial court dismissing Liberty Lloyds from this lawsuit.
NOTES
[1] Although this court in Hudson v. Thompson, 422 So.2d 640, (La.App. 3d Cir.1982) concluded that an endorsement to an automobile policy excluding coverage for the insured's minor son was not against public policy, there we failed to consider the effect of the Compulsory Motor Vehicle Liability Security Law on the named driver exclusion, a point first observed by another circuit in Fields v. Western Preferred Casualty Co., 437 So.2d 344, 346 (La.App.2d Cir.), writs denied, 440 So.2d 528, 754 (La.1983) and, more recently, by a member of the original Hudson panel in Arnaud v. Commercial Union Ins. Co., 594 So.2d 992, 995 (La.App. 3d Cir.), writ denied, 604 So.2d 994 (La.1992).