## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 13-1199

**PHILIP BONNETTE PEPITON, III**

**VERSUS**

**AMY TURNER**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 20105584
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

**Andrea D. Aymond**
**Attorney at Law**
**121 South Washington Street**
**Marksville, LA 71351**
**(318) 240-7232**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Philip Bonnette Pepiton, III**

**Chad P. Guillot**
**Attorney At Law**
**P. O. Box 1589**
**Marksville, LA 71351**
**(318) 253-6656**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Amy Turner**

**GREMILLION, Judge.**

The plaintiff, Philip Bonnette Pepiton, III, appeals the trial court's judgment awarding primary domiciliary custody to the defendant-appellee, Jade Turner.[1] For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Pepiton and Turner are the parents of Cole Pepiton, who was born in March 2009. Pepiton and Turner never married. Pepiton was eighteen years old at the time of Cole's birth; Jade was sixteen. Since Cole's birth, extensive litigation has ensued over his custody.

In August 2010, Pepiton filed "Rules to Establish Filiation, Child Visitation/Custody, and Child Support," in which he sought an award of joint custody on an equal-sharing basis until Cole reached school age. Following a September 2010 hearing, a consent judgment was rendered by the trial court awarding joint custody and naming Turner as the primary domiciliary parent and awarding Pepiton visitation from Thursday at 6:00 p.m. through Sunday at 6:00 p.m. on alternating weekends.

In January 2011, Turner filed a "Petition for Change of Custody and Child Support," urging that the current plan was not in Cole's best interests. Following a February 2011 hearing, the trial court rendered a consent judgment in June 2011, designating the parties as co-domiciliary parents and setting forth a detailed visitation plan.

In May 2012, Pepiton filed a "Rule for Reduction of Child Support and for Incidental Relief." In June 2012, the trial court rendered an Interim Order reducing

---

[1] At the time this litigation began Jade Turner, the mother of the child, was a minor; thus, her mother, Amy Turner, was substituted as the proper party. Jade has since reached the age of majority and all references to "Turner" throughout this opinion refer to Jade.

Pepiton's child support payment and maintaining shared custody of Cole. In July 2012, Turner filed a "Rule for Contempt; For Increase in Child Support; and for Modification of Child Custody." The trial court rendered a consent judgment in July 2012, maintaining shared custody and designating Pepiton and Turner co-domiciliary parents.

In July 2013 Pepiton filed a "Rule to Modify Child Custody and Child Support," urging that he be designated primary domiciliary parent subject to visitation by Turner. Turner also filed a "Rule to Modify Child Custody and Child Support" in July 2013, urging that she be named primary domiciliary parent.

The trial court rendered a considered decree in August 2013, naming Turner the primary domiciliary parent and setting forth a detailed visitation schedule. Pepiton now appeals.

## ISSUES

Pepiton assigns as error:

1. The trial court erred in modifying the existing custody order by failing to find that Jade Turner proved that such modification of custody was in the best interest of the child.

2. The trial court clearly abused its discretion in granting primary custody of Cole to Jade Turner when the trial court's own application of the twelve relevant factors in determining the best interest of the child to the facts of this case favored Phillip Pepiton.

3. The trial court erred in failing to give appropriate consideration to maintaining the continuity and stability of the child's environment in awarding Jade Turner primary custody when Jade admittedly moved multiple times, away from both sides of the child's family, while the father maintained his residence near both his family and Jade's family.

## DISCUSSION

The law is well-settled that the trial court's finding in custody matters is entitled to great weight on appeal because it is in a superior position to assess the

best interests of the child based on the testimony of the witnesses and parties. *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756. On appeal, we will not reverse a trial court's custody ruling in the absence of an abuse of discretion by the trial court. *Id.* The best interests of the child are of the utmost importance. La.Civ.Code art. 131; *Deason v. Deason*, 98-1811 (La.App. 3 Cir. 4/5/00), 759 So.2d 219. In considering the child's best interests, pursuant to La.Civ.Code art. 134, the court may consider the following factors:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

The trial court gave extensive oral reasons at the conclusion of the hearing discussing the Article 134 factors and concluding that "[I]t's so close it's not even worth the parties bickering over. They are fighting over so much in regards to the child, but so little territory to fight over because everything is so close between the parties." Pepiton's main argument is that Turner has moved several times while he has stayed in the same residence. Turner's main argument is that Cole is now school-aged and needs to be in one residence during the week, and that Pepiton's parents primarily care for Cole. The trial court specifically found that Turner did not move to thwart visitation by Pepiton. At the August 2013 hearing, the trial court heard the testimony of Turner, Pepiton, and Pepiton, Jr. (Phillip's father).

Turner testified that she graduated from Pineville Beauty School in November 2012, and is employed as a barber in Creola, Louisiana, earning approximately $1,500.00 per month. She had recently moved into a rental home in Grant Parish with Cole and her daughter, who was two years old. Turner said that she was engaged and living with her fiancé in Rapides Parish, but that they broke up due to his infidelity.

Turner testified that Cole will be entering either Colfax Head Start or the daycare that her daughter attends. She said that Cole has played "wee-ball" for the past two years and football last fall. On cross-examination, Turner was asked where she had lived. Originally, she lived with Pepiton, then her mother's house, at LSUA while attending college, back to her mother's house, with her fiancé, and now in her own rental house. She said she briefly stayed at her mother's house while awaiting the completion of her rental house.

Turner testified that her aunt owns the barber shop where she works and that her uncle and his wife live nearby in Tioga with their daughter. She testified that her mother and Cole's paternal grandparents live in Avoyelles Parish.

Pepiton testified that he lives in Plaucheville, Louisiana, with his pregnant girlfriend in a house owned by his father. He said that he is currently disabled from a motor vehicle accident and receives disability benefits of $1,000.00 per month for himself and $500.00 per month for Cole. While he is not employed and receives no income, he helps out as his father's nursing home doing "things that [the maintenance man is] not smart enough to do." Pepiton testified that his father purchased his vehicles and four-wheeler and pays all of his bills, including his insurance.

Regarding his accident, Pepiton said that he had a brain injury, broken femur, multiple fractures in his back, and that most of the bones in his face were crushed. Although he has no physical limitations, Pepiton was unaware of when he might return to work. He did state that he was taking online classes through LSU Eunice that he pays for with a federal grant.

Pepiton said that he takes care of Cole when he has him and that they go to the nursing home, where many of his relatives work, "to hang out." Pepiton has lived in Avoyelles Parish his entire life and has numerous family members who reside there.

Pepiton, Jr. testified that Cole has many maternal and paternal relatives living in Avoyelles Parish. He said that although he owns the house that his son lives in, his son pays the note. Pepiton, Jr. said that he sees Cole daily when his son has him because they have adjoining properties. Although all of the bills are in his name, Pepiton, Jr. said that his son pays them except for the insurance.

5

The trial court referred to the "youthful mistakes" made by both parties. We agree, and view Turner's many moves as steps taken to get her life in order and become an independent adult. The record demonstrates that Pepiton has not had to move in order to make his own way because his father provides for all of his needs. The trial court noted Turner's "great maturity in her staying on her own two feet, not living off of her momma and moving and getting her own place and getting her rent and so on." Nevertheless, the trial court found that both parents have a deep and genuine love for the child. We do not doubt that, but due to the child's need to start school, it is impossible to maintain a shared custody arrangement. We find that the trial court did not abuse its discretion in finding that Turner moved to better her life rather than for any reason that would hinder Pepiton's access to his son.

The trial court found that a shared residence is impossible due to the distance between the parties (Avoyelles Parish to Grant Parish). The trial court noted that "the reasonability and care for the child exercised previously by each party again is going to be pretty much even now, it's probably evened out over the years and I think both parties have done well." Nevertheless, the trial court awarded Turner primary domiciliary custody, and we find no abuse in that award.

## CONCLUSION

The judgment of the trial court awarding primary domiciliary custody to the defendant-appellee, Jade Turner, is affirmed. All costs of this appeal are assessed against the plaintiff-appellant, Philip Bonnette Pepiton, III.

**AFFIRMED**.