GRADY P. GALLAND

VERSUS

HEIDI M. GALLAND


********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2009-4104-A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

********

MARC T. AMY
JUDGE

********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Jimmie C. Peters, Marc T. Amy, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**


**Thibodeaux, Chief Judge, dissents and assigns reasons.**
**Gremillion, J., dissents for the reasons assigned by Chief Judge Thibodeaux.**

Brian K. Thompson
2915 Jackson Street
Alexandria, LA   71301
(318) 473-0052
COUNSEL FOR DEFENDANT/APPELLANT:
     Heidi M. Galland

Cory P. Roy
Roy & Scott Law Offices
Post Office Box 544
Marksville, LA   71351
(318) 240-7800
COUNSEL FOR PLAINTIFF/APPELLEE:
     Grady P. Galland

**AMY, Judge.**

In this custody dispute, the parents could not agree on either a custody arrangement or which school their children would attend. The mother filed a reconventional demand, seeking allegedly unpaid child support and seeking to make a previous cost award executory. After a hearing, the trial court awarded joint custody, with the father having domiciliary status, and establishing a physical custody schedule. The trial court also directed that the children be enrolled in the school proposed by the father. The mother appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The parties to this litigation, Grady P. Galland and Heidi M. Galland, have two minor children together, Colin and Cadence.[1] The procedural history of this matter was set out in a previous appeal, *Galland v. Galland*, 12-1075, pp. 2-4 (La.App. 3 Cir. 3/20/13), 117 So.3d 105, 106-7, *reh'g granted* (for the limited purpose of clarifying previous judgment), which stated:

> The parties entered into a stipulated Consent Judgment dated December 23, 2009, awarding them joint custody and co-domiciliary status. The parties shared physical custody on a week-by-week (7/7) basis. At the time of the divorce, both parties lived in Plaucheville, Avoyelles Parish, Louisiana. Heidi subsequently moved to Alexandria, Louisiana [in nearby Rapides Parish]. Shortly after Heidi moved, Grady sought and obtained an order from the trial court that Colin would attend St. Mary's for the 2010-2011 school year. Colin attended St. Mary's for the 2010-2011 school year. The parties continued to share custody on a 7/7 basis despite the increased distance between their homes.
>
> In January 2011, Grady filed a Motion to Compel Psychological Evaluations of both parties and their children to determine the optimal custodial and school arrangements. In June

---

[1] Ms. Galland is also referred to as Ms. Mahl, her maiden name, in the record. Additionally, the record contains various spellings of Colin and Cadence's names. We use the spellings contained in the petition.

2011, Grady filed a Motion for Contempt because Heidi was contemplating enrolling Colin in Nachman despite the previous judgment allowing him to attend St. Mary's until further order of the court. In July 2011, Heidi filed a Rule for Declaration on School Attendance ("Rule to Declare School"), seeking an order allowing Colin to attend Nachman for the 2011-2012 school year. The trial court deferred these various motions and rules pending the results of the independent psychological evaluation ordered by [the] court. Indeed, the trial court ordered Dr. Daniel Lonowski to evaluate the parents and the children in the fall of 2011.

While the trial court motions were pending, Heidi and Grady reached a verbal agreement whereby Colin would attend Nachman for the 2011-2012 school year. The parties also verbally agreed to modify the shared 7/7 custody plan such that the children remained with Heidi during the school week. The parties sought to minimize travel time and maximize stability for the children. At that time, Colin attended Nachman, and Cadence attended Calvary Daycare in Alexandria. Grady later changed his mind about Colin's schooling, feeling that Colin "would be more comfortable at St. Mary's." Nevertheless, Colin finished the school year at Nachman, achieving the A/B Honor Roll.

. . . .

In its written Reasons for Ruling, the trial court rendered a Considered Decree, granting the parties joint custody on a "9/3 split" and appointing Grady the primary domiciliary parent. Specifically, the trial court ordered the children to reside with Grady during the school week, with Heidi receiving visitation every other weekend, with an additional two evenings during the month for dinner. The trial court granted Heidi increased visitation during the summer months. The Considered Decree further ordered both children to attend St. Mary's in Cottonport.

Finding that the trial court went beyond the scope of the pleadings in making a custody determination, the panel reversed the decision of the trial court and ordered that "the parties shall have co-domiciliary status and shall share physical custody on a week-by-week (7/7) basis[,]" and that the children be enrolled at Nachman for the 2013-2014 school year. *Id.* at 109. The record indicates that the parties agreed that, because there was a short period of time left in the school year,

2

Colin should finish the 2012-2013 year at St. Mary's. However, the children began the 2013-2014 school year at Nachman as ordered.

Thereafter, the trial court held hearings on the issues of child custody and Ms. Galland's reconventional demand. After multiple days of testimony, the trial court determined that Mr. Galland should have domiciliary custody. Further, the trial court ordered that, during the school year, Ms. Galland would have physical custody on alternating weekends, with a "supper night" during the week, and during the summer months, the parties would split physical custody on a "7 and 7" basis, with Ms. Galland having one 14-day vacation period. Further, the trial court ordered that the children attend St. Mary's. Additionally, the trial court denied Ms. Galland's reconventional demand, which sought payment of child support allegedly owed by Mr. Galland and to make executory costs associated with the previous appeal.

Ms. Galland appeals, asserting as error that:

1. The trial court abused its discretion by permitting ex parte communications and documents not admitted into evidence to influence its decision, and failing to perform its duties without bias and prejudice.

2. The trial court abused its discretion in finding that the twelve (12) non-exclusive factors provided in Louisiana Code of Civil Procedure Article 134 [sic] favored designating Appellee-father as domiciliary parent of the parties' two minor children and ordering them to attend school in the Appelle[e]-father's home parish when the evidence presented proved that it is in the best interest of the children for Appellant-mother to continue acting as the domiciliary parent and for the child to attend school in the mother's home parish.

3. The trial court abused its discretion by denying the Appellant-mother's request, without any reason, to place Appellee-father in arrears for his failure to pay child support since July 2012 in violation of the December 23, 2009 Consent Judgment on Rule, signed by the trial court.

4. The trial court abused its discretion by denying Appellant-mother's request, without any reason, to make executory and payable the amount of the appeal costs assessed to Appellee-father by this Court in its March 20, 2013 opinion reversing the trial court's July 2012 ruling in this matter.

**Discussion**

*Allegations of Bias and Consideration of Evidence Outside the Record*

Ms. Galland first contends that the trial court was biased against her. In support of this argument, she points to the trial court's observation that "talk on the street" was that she had made disparaging comments about the trial court and the trial court's questioning of her regarding recordings she made of conversations between her and Mr. Galland. Ms. Galland also points to the trial court's questioning of witnesses and comments concerning the witness testimony and his own life experience. Further, Ms. Galland alleges that the trial court erred in relying on documents which were not admitted into evidence, in particular the deposition of one of the counselors, Dr. Karin Ebersohn.

As an initial observation, we note that Ms. Galland's accusations regarding bias were not presented to the trial court within the context of a motion to recuse. One of the grounds for recusal is when the judge is "biased, prejudiced, or interested in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys or any witness to such an extent that he would be unable to conduct fair and impartial proceedings." La.Code Civ.P. art. 151(A)(4). The procedure for recusal requires that a motion to recuse "shall be filed prior to trial or hearing unless the party discovers the facts constituting the ground for recusal thereafter, in which event it shall be filed immediately after these facts are discovered, but prior to judgment." La.Code Civ.P. art. 154. Where a party claims that the trial court was biased but fails to file a motion to recuse, this court has

4

previously held that the issue may not be considered on appeal. *Campbell v. Nat'l Union Fire Ins. Co.*, 92-592 (La.App. 3 Cir. 12/7/94), 647 So.2d 569.

Our review of the record shows that the trial of this matter was on three separate days spread out over the course of a period of more than two months. Although the trial court issued oral reasons for judgment on October 31, 2013, formal judgment was not signed by the trial court until December 19, 2013. *See Radcliffe 10, LLC v. Zip Tube Sys, of La.*, 06-128 (La. 11/3/06), 942 So.2d 1071. Further, Ms. Galland's allegations of bias primarily stem from actions taken by the trial court during the trial of this matter. Thus, Ms. Galland had sufficient opportunity to discover the facts she alleges are possible grounds for recusation and to file a motion to recuse, if warranted, within the time periods contemplated in La.Code Civ.P. art. 154. Accordingly, because this matter was not raised below, through a motion to recuse, we do not consider this issue for the first time on appeal. *Campbell*, 647 So.2d 569.

With regard to Ms. Galland's allegations that the trial court considered documents outside the record, in particular, the deposition of Dr. Ebersohn, our review of the record shows that, in its reasons for ruling, the trial court stated that "we have the deposition testimony of Dr. Ebershon[sic], which I have reviewed in this case." The trial court later states that on "page 3" Dr. Ebersohn noted that the "children wanted to stay … at least Colin at St. Mary. Not happy at Nachman. Felt like he was being picked on at school." Our review of the record indicates that Dr. Ebersohn's *report* (which included progress notes) was admitted into evidence, but not her deposition.[2] Although it is unclear from the record whether Dr.

---

[2] In his sur-reply brief, Mr. Galland has attached several pages of Dr. Ebersohn's deposition in support of his argument that "page 3" of Dr. Ebersohn's deposition consists of

Ebersohn's deposition was actually available to the trial court, we observe that the information that Ms. Galland complains of in her brief is contained in Dr. Ebersohn's report (e.g., in regards to Nachman: "[Colin] feels that people pick at him. He named 6 incidents that made him feel uncomfortable."). Further, we observe that the trial court issued lengthy reasons for judgment, of which Dr. Ebersohn's observations constituted only a small part. Accordingly, even if the trial court erroneously considered Dr. Ebersohn's deposition, we find any such error harmless. *See Midland Funding LLC v. Kelly*, 11-659 (La.App. 4 Cir. 12/7/11), 81 So.3d 84.

*Custody Determination / Article 134 Factors*

Ms. Galland's primary complaint on appeal is that the trial court erred in awarding domiciliary custody to Mr. Galland and directing that the children attend school in Avoyelles Parish. Ms. Galland contends that the trial court improperly weighed the evidence and testimony presented at trial. According to Ms. Galland, almost every one of the "best interest" factors contained in La.Civ.Code art. 134 weighs in her favor, and, in support of that argument, she points to the testimony of Dr. Lonowski, who recommended that the children be placed with Ms. Galland; Mr. Galland's lack of religiousness; the animosity and inability to communicate between the parents and their respective families; the superiority of the children's education in Rapides Parish; and Ms. Galland's contention that she had been primarily responsible for the children since they were born.

Even if it would have weighed the evidence differently, an appellate court

---

"boilerplate" language and not testimony. However, we note that the appellate court may not consider evidence which is not in the record on appeal and cannot receive new evidence. *Reese v. Dresser Valve Indus.*, 10-241 (La.App. 3 Cir. 10/6/10), 48 So.3d 406. Since documents attached to appellate briefs are not part of the appellate record, the appellate court may not consider those documents if they are not included in the record on appeal. *Id.*

cannot set aside the trial court's factual findings unless they are manifestly erroneous or clearly wrong. *Stewart v. Stewart*, 11-1334 (La.App. 3 Cir. 3/7/12), 86 So.3d 148. Further, the trial court's custody determination is entitled to great weight and will not be reversed absent an abuse of discretion. *Pepiton v. Turner*, 13-1199 (La.App. 3 Cir. 3/5/14), 134 So.3d 160.

The trial court's award of custody shall be made in accordance with the best interest of the child. La.Civ. Code art. 131. Pursuant to La.Civ. Code. art. 134:

> The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
>
> (1) The love, affection, and other emotional ties between each party and the child.
>
> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> (6) The moral fitness of each party, insofar as it affects the welfare of the child.
>
> (7) The mental and physical health of each party.
>
> (8) The home, school, and community history of the child.
>
> (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
>
> (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

The trial court is not required to make a mechanical evaluation of all of the factors listed in Article 134. *Stewart*, 86 So.3d 148. Nor is it bound to give more weight to one factor over another; the relative weight of each factor is left to the discretion of the trial court. *Harvey v. Harvey*, 13-81 (La.App. 3 Cir. 6/5/13), 133 So.3d 1, *writ denied*, 13-1600 (La. 7/22/13), 119 So.3d 596.

Our review of the record shows that the trial court issued lengthy and well-supported oral findings of fact in making its custody determination. Therein, the trial court addressed the Article 134 factors, and found that many of the factors were "absolutely equal[,]" although several of the factors weighed in favor of the father. The trial court also noted that neither Ms. Galland nor Mr. Galland was perfect, and that both parents had "made some mistakes." The trial court found that both parents were equally to blame for the lack of encouragement of a close, continuing relationship with the other party. With regard to Mr. Galland, the trial court faulted him for an incident involving Colin's cell phone and for drinking alcohol at a barbeque where Colin fell and bruised his arm. With regard to Ms. Galland, the trial court found that both she and Mr. Galland were "good parents," but that she lost much of her credibility and is "opportunistic and manipulative." In particular, the trial court pointed out that Ms. Galland's testimony was directly contradicted on two occasions by her sworn testimony in another pending matter, that she testified that she could take breaks from her job whenever it was needed but that she failed to schedule a counseling session with the children's teacher, and

that she attempted to record Mr. Galland in "an obvious attempt by her to manipulate him and extort him or trap him in an unfair manner."

The majority of Ms. Galland's arguments concern the trial court's findings of fact or determinations concerning the weight of the evidence—determinations which are well within the trial court's purview and will not be disturbed by this court absent manifest error or an abuse of discretion, as appropriate. *See Stewart*, 86 So.3d 148; *Pepiton*, 134 So.3d 160. Although Ms. Galland argues that the trial court's determination with regard to almost every one of these factors was erroneous, our review of the record reveals adequate support for the trial court's findings of fact. Further, we find no abuse of discretion in the trial court's weighing of the evidence or award of custody. For example, although Ms. Galland complains that the trial court erred in failing to consider Mr. Galland's lack of religiousness, the record shows that, although Mr. Galland stated that he is not a churchgoer, he felt that it was important for the children to have a religious foundation, and that St. Mary's, a Catholic school, did a "good job" in that regard. In making its custody determination, the trial court specifically referenced that testimony with regard to the parties' capacity "to give the child love, affection, and spiritual guidance[.]" La.Civ.Code art. 134(2).

Accordingly, we find no merit to Ms. Galland's assignment of error in this regard.

*Unpaid Child Support and Court Costs*

Ms. Galland asserts that the trial court erred in denying her reconventional demand, which sought allegedly unpaid child support and to make executory the appeal costs associated with the previous appeal, without giving any reasons. Ms. Galland's argument herein consists of two sentences which essentially reiterates

her assignment of error. Of note, Ms. Galland cites no codal article, statute, rule, or case which supports her argument. Louisiana Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4) requires that "[a]ll assignments of error and issues for appeal must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed." Restating an assignment of error without argument or citation without authority does not constitute briefing. *Cormier v. La. Farm Bureau Cas. Ins. Co.*, 12-892 (La.App. 3 Cir. 2/6/13), 109 So.3d 509, *writ denied*, 13-427 (La. 4/5/13), 110 So.3d 596. Accordingly, we do not consider Ms. Galland's arguments in this regard.

### DECREE

For the foregoing reasons, the judgment of the trial court signed on December 19, 2013, is affirmed. Costs of this appeal are assessed to the appellant, Heidi M. Galland.

**AFFIRMED.**

GRADY P. GALLAND

VERSUS

HEIDI M. GALLAND

THIBODEAUX, Chief Judge, dissenting.

I dissent from the majority's decision to affirm the judgment of the trial court awarding domiciliary status to Mr. Galland.

Dr. Daniel Lonowski testified as an expert in clinical psychology. He conducted an evaluation of all of the parties in November 2011. He testified that his reports and conclusions were as valid at the time of this custody trial as they were in November 2011. He reached this conclusion despite being questioned about the potential impact of Mrs. Galland pleading guilty to disturbing the peace and having a pending charge of cruelty to the infirm. He further based his conclusion despite his knowledge of Mr. Galland's being accused of physical abuse of the child. Because of the volatility of the relationship between Mrs. Galland and the paternal grandparents, he was not surprised by the criminal charges, and he could have predicted the spanking of the minor child because of his characterization of Mr. Galland as being "emotionally reactive in conflict situations."

The trial judge observed that "Dr. Lonowski had thorough reports based on his interview with all the parties." He further observed that Dr. Lonowski was "the most important witness on the case." The trial judge did not give any weight whatsoever to Dr. Lonowski's findings despite Dr. Lonowski being "the most

important witness on the case." Dr. Lonowski was not contradicted. It is axiomatic that "the trier of fact should accept as true the uncontradicted testimony of a plaintiff witness, absent a sound reason for his rejection." *Johnson v. Ins. Co. N. Am.*, 454 So.2d 1113, 1117 (La.1984). The trial court had no sound reason for the failure to consider Dr. Lonowski's testimony, and did not articulate a reason.

Dr. Lonowski testified that Mr. Galland "would tend to be reactive in the face of novelty . . . emotionally reactive in conflict situations." Certainly, the long history of animosity and litigation between these parents suggests a high potential for "conflict situations." Mr. Galland, according to Dr. Lonowski, "could engage in somewhat devious maneuvers . . . in order to achieve his goals," and "he can become quite impatient under stress."

Moreover, Dr. Lonowski unequivocally testifed as follows:

Q.    Can you explain where that recommenation came from other then. . .

A.    It came from my impression from all four parties. The children, the observation of the children with both parents seemed relatively equal in terms of the affection displayed, the attention, the management of the children in the observation period. Their perceptions of the children another, the way the children related to each of their parents, the parenting stress index indicated that both parents were experiencing normal parenting stress, they could manage their children well, although with perhaps different styles of parenting, that was the crux of their conflict while in their marriage as well as after their marriage. So, putting all that together there was no psychological disorder discerned from each parent, they had certain different personality styles, he's more of a risk taker caviler [sic], shoot from the hip, she's more compulsive and organized and perhaps a little rigid in terms of her outlook in life and so those two personalities don't work very well, obviously it didn't work for their marriage, they didn't know how to make that blend, and didn't work in terms of their parenting styles so, it seemed to me that the tender ages of the children, the fact that they were that age and perhaps needed more of the maternal influence as well, but not necessarily because I think both parents could meet the children's needs, but I think, I can't specifically state any one particular factor that lent itself to the mother having domiciliary custody except that it just, the feel of it from all the data suggested that that would be best for the kids.

Q: So no any one particular factor, but a cumulative effect of your evaluation?

A: Right. Some of these things get close, they tend to get close and I'm not sure if an evaluator can always dismiss the fact, raised by the momma and the tender age of the children, that they perhaps need a maternal influence early on, that may have had a factor in it.

I am cognizant that a trial court has discretion in child custody matters. However, that discretion is not immutable and must be based on sound judgment after a consideration of the entire record. I am convinced that the trial court abused its discretion in awarding Mr. Galland domicilary status based on the foregoing reasons. I would reverse the judgment of the trial court and remand for the implementation of a Joint Custody Order.