GAIDRY, J.
 

 |2In this case involving custody and child support issues, the mother appeals a trial court judgment denying her request to have the father ordered to pay his proportionate share of the child’s extracurricular activities and private school tuition and denying her request to either order the father to accommodate the child’s schedule of extracurricular activities or to modify the physical custody schedule to accommodate the child’s extracurricular activities. We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Brook Angelette and Cyd Calíais were never married but had one child together, Brooklyn Angelette, born August 2, 2004. A March 31, 2006 consent judgment provided that the parties would have joint custody of Brooklyn, with Mr. Angelette having physical custody of Brooklyn every other weekend from 5:00 p.m. on Friday until 5:00 p.m. on Sunday, two non-consecutive weeks during the summer, and on certain designated holidays, with physical custody to be exercised at Mr. Angelette’s parents’ house until he made suitable living arrangements. The consent judgment also ordered Mr. Angelette to maintain health insurance on Brooklyn, to pay child support in the amount of $550.00 per month, and to reimburse Ms. Calíais for seventy-six percent of all non-covered medical expenses, and allowed Mr. Ange-lette to claim Brooklyn on his income taxes every year.
 

 On December 19, 2006, Ms. Calíais filed a rule to show cause seeking a recalculation of child support and a change in the allocation of the tax dependency status. The parties entered a consent judgment, signed by the court on June 1, 2007, which provided that Mr. Angelette would pay child support in the amount of $450.00 per month and would continue to be Irresponsible for forty-five percent of all non-covered medical expenses for Brooklyn.
 

 On May 28, 2010, Ms. Calíais filed another rule to show cause, seeking to have the court order Mr. Angelette to participate in counseling sessions with Brooklyn and to pay his proportionate share of the non-covered expenses of that counseling; to have the court modify the physical custody schedule to accommodate Brooklyn’s extracurricular activities; to have the court require Mr. Angelette to make more appropriate sleeping arrangements for Brooklyn during his physical custody periods; and to have the court order Mr. Angelette to pay his proportionate share of Brooklyn’s private school tuition and extracurricular activities, or alternatively to increase child support to include these expenses.
 

 After a hearing, the trial court rendered judgment ordering Mr. Angelette to reimburse Ms. Calíais $1,437.50, one-half of the
 
 *1125
 
 sums previously paid for Brooklyn’s counseling, and increasing Mr. Angelette’s child support obligation to $524.00 per month. The court declined to modify the physical custody schedule set forth in the parties’ prior consent judgment and also declined to order Mr. Angelette to pay for private school tuition or any of the child’s extraordinary expenses. Ms. Calíais has appealed this judgment, asserting that the trial court erred in failing to render a joint custody implementation plan which allocates the rights and responsibilities of the parents, in failing to order Mr. Angelette to continue counseling or mediation, and in failing to order Mr. Angelette to pay his proportionate share of Brooklyn’s extraordinary expenses.
 

 RDISCUSSION
 

 In her first assignment of error, Ms. Calíais alleges that the court erred in failing to render a joint custody implementation plan to allocate the rights and responsibilities of the parties, as required by La. R.S. 9:335.
 

 Louisiana Revised Statutes 9:335(A)(1) provides that in a proceeding in which joint custody is decreed, a joint custody implementation order shall be rendered, except for good cause shown. Louisiana Revised Statutes 9:335(A)(2) provides that the implementation order shall allocate the time periods during which each parent will have physical custody of the child so that the child is assured of frequent and continuing contact with both parents; that physical custody should be shared equally, to the extent that it is both feasible and in the best interest of the child; and that the order should allocate the legal authority and responsibility of the parents. Louisiana Revised Statutes 9:335 does not require that a specific form be used for the implementation plan.
 
 Caro v. Caro,
 
 95-0173, p. 2 (La.App. 1 Cir. 10/6/95), 671 So.2d 516, 518.
 

 The March 31, 2006 consent judgment awarded joint custody, ordered a physical custody and holiday custody schedule with set dates and venues included, and contained provisions for the parents’ rights and responsibilities relative to claiming Brooklyn for income tax purposes, maintaining health insurance on Brooklyn, and the payment of child support. Although no domiciliary parent was specified in the judgment, La.R.S. 9:335(C) provides that where a domiciliary parent is not designated in the joint custody decree, and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code. The March 31, 2006 judgment qualifies as the custody order and the | .^implementation plan. The fact that it was not entitled “implementation plan,” is of no consequence.
 
 See Caro,
 
 95-0173 at p. 3, 671 So.2d at 518.
 

 Ms. Calíais argues on appeal that the court should have rendered a joint custody implementation order that specifically set forth the responsibilities of the parents regarding Brooklyn’s extracurricular activities. There is no authority for this assertion in the law. Ms. Calíais asked the court to require Mr. Angelette to accommodate Brooklyn’s rigorous dance and cheerleading practice schedule during his physical custody periods, either by giving up time with the child to allow her to attend the lengthy practices and travel to competitions, or by rescheduling his physical custody periods. However, the testimony established that Mr. Angelette did not want to change his physical custody periods with Brooklyn to a weekday because she also has practices on weekday afternoons and because his work schedule
 
 *1126
 
 during the week would not allow him to spend as much time with her as he could on a weekend. Additionally, Brooklyn has a half sister who is on the same every-other-weekend schedule with Mr. Ange-lette as Brooklyn, and Brooklyn would not be able to spend time with her half sister if her physical custody periods with Mr. An-gelette were changed to accommodate her extracurricular activities. We disagree with Ms. Callais’s assertion that the court was required to set forth the parties’ responsibilities regarding Brooklyn’s extracurricular activities in the joint custody implementation order, and find no error in the trial court’s refusal to order Mr. Ange-lette to accommodate Brooklyn’s extracurricular activities during his physical custody period. Ms. Calíais also argues that the trial court’s refusal to require Mr. Angelette to accommodate Brooklyn’s extracurricular activity schedule is a disregard of the decision-making authority bestowed upon her by La. R.S. 9:335(B)(S) as the domiciliary parent. However, as noted | f,above, no domiciliary parent was named in the custody order and joint custody implementation order. This assignment of error is without merit.
 

 In her next assignment of error, Ms. Calíais alleges that the trial court erred in not ordering Mr. Angelette to participate in counseling for Brooklyn and in not ordering the parties to mediate their differences.
 

 Louisiana Revised Statutes 9:332(A) provides that the court
 
 may
 
 order the parties to mediate their differences in a custody or visitation proceeding. There is no statutory requirement that a court order mediation in cases where the parties cannot reach an agreement on their own, and Ms. Calíais did not request that the trial court order mediation in this matter. Thus, it is clear that the trial court did not err in failing or order mediation.
 

 Ms. Calíais next argues that the court erred in refusing to order Mr. Ange-lette to participate in counseling with Brooklyn and to pay for half of those future counseling sessions, where “it was clear that the parties’ participation in counseling ... had improved various issues.” Ms. Calíais cited no authority for her assertion that it was error for the court to fail to order counseling.
 

 Ms. Calíais testified that she began bringing Brooklyn to counseling in August of 2009 because she had been throwing temper tantrums when it was time for her to go to Mr. Angelette’s house. Ms. Cal-íais did not consult Mr. Angelette about seeking counseling for Brooklyn, but Mr. Angelette did participate in counseling sessions when his participation was requested. Dawn Grazier Chadwick, a licensed professional counselor (LPC), testified at the hearing that she had had thirty one sessions with Brooklyn. Ms. Chadwick testified that she helped Brooklyn deal with family conflict and separation anxiety, and they had made much progress. When asked about |7the need to continue counseling, Ms. Chadwick stated that “she can continue if her parents feel that she needs to.”
 

 Although the court ordered Mr. Ange-lette to pay for half of Brooklyn’s past counseling sessions, the court declined to order him to pay for any future sessions or to participate in any future sessions. The testimony established that Brooklyn’s issues had been mostly resolved in counseling and any remaining problems centered around the parents’ inability to communicate with each other and to resolve conflict. Based on this, we see no error in the court’s decision not to order future counseling sessions for Brooklyn.
 

 Ms. Callais’s final assignment of error is that the court erred in denying her
 
 *1127
 
 request to order Mr. Angelette to pay his proportionate share of the costs of Brooklyn’s private school tuition and extracurricular activities. In ruling on the request for contribution to the expense of dancing and cheerleading, the court noted that Ms. Calíais wanted the child involved in dancing and cheerleading, not Mr. Angelette, and the court would not order Mr. Ange-lette to pay for any of it. The court also declined to add private school tuition to Mr. Angelette’s child support obligation, noting that the parties did not put on any evidence regarding the need for Brooklyn to attend private school. The court did increase Mr. Angelette’s child support obligation to $524.00 per month after determining that he was currently paying $74.00 less per month under the consent judgment than the child support guidelines call for; however, the court specifically stated that while Ms. Calíais could choose to use this additional amount for extracurricular activities or private school tuition if she wished, the court was not ordering Mr. Angelette to pay private school tuition.
 

 | ^Louisiana Revised Statutes 9:315.6 provides that the following expenses
 
 may
 
 be added to the basic child support obligation, either by agreement of the parties or by order of the court:
 

 (1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.
 

 (2) Any expenses for transportation of the child from one party to the other.
 

 (3) Special expenses incurred for child rearing intended to enhance the health, athletic, social, or cultural development of a child, including but not limited to camp, music or art lessons, travel, and school sponsored extracurricular activities.
 

 The “needs of the child” referred to in subsection (1) to be met by the private school need not be particular educational needs, but may include such needs of the child as the need for stability or continuity in the child’s educational program.
 
 See
 
 La. R.S. 9:315.6, Comment — 2001. The abuse of discretion standard applies to the court’s decision whether to add private school tuition or other special expenses incurred for child rearing to the child support obligation.
 
 See Walden v. Walden,
 
 00-2911, p. 12 (La.App. 1 Cir. 8/14/02), 835 So.2d 513, 523.
 

 Ms. Calíais testified that the cost of Brooklyn’s dancing is between $2,300.00 and $2,500.00 per year, and her cheerlead-ing activities cost approximately $2,200.00 per year. Ms. Calíais made the decisions regarding Brooklyn’s participation in dancing and cheerleading, although it appears that Mr. Angelette was at least informed, if not consulted, regarding her participation. Mr. Angelette testified that Brooklyn sometimes cried and told him she did not want to go to dancing or cheerleading, and he believed that it was more important to Ms. Calíais than to Brooklyn that she participate. Although Mr. Angelette paid for part of Brooklyn’s dancing | glasses when she first started, his share at that time was only $25.00 per month. As for Brooklyn’s private school tuition, Mr. Angelette testified that Ms. Calíais did not consult him before enrolling Brooklyn in private school; she merely informed him of her decision and told him he would have to pay for half. Brooklyn’s private school tuition is $2,998.00 per year, and Mr. Angelette testified that he had contributed $300.00 towards her tuition, but that was all he could afford. As noted by the court, the parties put on no evidence regarding any needs of Brooklyn’s which were met by attendance at her private school.
 

 
 *1128
 
 Based on the evidence in the record, we cannot say that the court abused its discretion in declining to add the costs of Brooklyn’s private school tuition and extracurricular activities to Mr. Angelette’s child support obligation. This assignment of error lacks merit.
 

 CONCLUSION
 

 The judgment appealed from is affirmed. Costs of this appeal are to be borne by appellant, Cyd Calíais.
 

 AFFIRMED.
 

 WELCH, J., concurs without reasons.