WÉIMER, Justice.
hWe granted certiorari in this child custody matter to review the designation of both parents as “co-domiciliary parents,” a designation which has divided the courts of appeal. Additionally, we must review the related question of whether the trial court issued a valid joint custody implementation order. After analyzing La. R.S. 9;335, wé reverse that portion of the appellate court decision upholding the trial court’s designation of “co-domiciliary parents.” We agree with the court of appeal that the *702 custody judgment rendered by the trial court failed to comply with the requirements for a joint custody implementation order, as stated in La. R.S. 9:335(A)(3). Given the absence of either a proper designation of a sole domiciliary parent or a valid joint custody implementation order, we remand to the trial court for a prompt hearing and determination on how joint custody should be implemented.
1 ¡¿FACTS AND PROCEDURAL HISTORY
Justin Hodges (“father”) and Amy Hodges (“mother”) were married in Ascension Parish on January 22, 2011, and, thereafter, established their matrimonial domicile in Livingston Parish. One child was born of the marriage on June 25,2012.
On May 28, 2014, the father instituted divorce proceedings in Livingston Parish. Both the father and the mother sought joint custody of the minor child, M.H., as well as to be designated as the child’s domiciliary parent. After a hearing, the trial court granted joint custody to the parents, ordered equal physical custody to be alternated weekly, and designated both parties as “co-domiciliary parents.”
The mother appealed the trial court decision, contending that its designation of both parents as “co-domiciliary parents” is not authorized by La. R.S. 9:335; she sought to be named as the sole domiciliary parent. The appellate court affirmed the “co-domiciliary” designation, but ruled that no valid joint custody implementation order had been rendered and remanded the case to the trial court “for the entry of a joint custody implementation order allocating the legal authority and responsibility of the parents with regard to the health, education, and welfare of the child.” See Hodges v. Hodges, 14-1575 (La.App. 1 Cir. 3/6/15), 166 So.3d 348, 356.
On application of the mother, this court granted a writ of certiorari. See Hodges v. Hodges, 15-0585 (La.5/15/15), 169 So.3d 380.
LAW AND ANALYSIS
In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 131. The best interest of the child is the sole criterion to be met in making a custody award, as the trial court sits as a sort of fiduciary on behalf of the child and must pursue actively that course of conduct which will be of the greatest benefit to the child. C.M.J. v. L.M.C., 14-1119 (La.10/15/14), 156 So.3d 16, 28, quoting Turner v. Turner, 455 So.2d 1374, 1378 (La.1984). It is the child’s emotional, physical, material and social well-being and health that are the court’s very purpose in child custody cases; the court must protect the child from the real possibility that the parents are engaged in a bitter, vengeful, and highly emotional conflict. Id. The legislature has mandated that the court look only to the child’s interests so that the court can fulfill its obligations to the child. Id. at 28-29.
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award. La. C.C. art. 132. In the absence of an agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.[1] Id.
*703 As provided in La. C.C. art. 134, all relevant factors in determining the best interest of the child must be considered by the court; such factors may include: (1) the love, affection, and other emotional ties between each party and the child; (2) the capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child; (3) the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs; (4) the length of time the child has lived in a stable, adequate environment and the desirability of maintaining continuity of that environment; (5) the permanence, as a family unit, of the existing or proposed custodial home or | ¿homes; (6) the moral fitness of each party, insofar as it affects the welfare of the child; (7) the mental and physical health of each party; (8) the home, school, and community history of the child; (9) the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference; (10) the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party; (11) the distance between the respective residences of the parties; and (12) the responsibility for the care and rearing of the child previously exercised by each party.
The list of factors provided in Article 134 is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. See La. C.C. art. 134, 1993 Revision Comment (b). The illustrative nature of the listing of factors contained in Article 134 gives the court freedom to consider- additional factors; and, in general, the court should consider the totality of the facts and circumstances of the individual case. See La.C.C. art. 134, 1993 Revision Comment (c).
In short, there are a number of factors which must be evaluated- by a court in arriving at the decision to award joint custody to the parents. However, once that decision is reached, La. R.S. 9:335, which is at the heart of the present case, governs a court’s determination of the details of the custody arrangement. With emphasis on the provisions especially relevant to the issues of domiciliary parent designation and implementation order, we reproduce the statute in full:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
L(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.[2]
(3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an imple *704 mentation order to the contrary or for other good cause shown,
(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by 'the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child. .
C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.[3] [Emphasis added.]
In this case, the mother contends that the trial court’s judgment is insufficient to constitute a joint custody implementation order. According to the mother, the judgment addresses physical custody, but fails to designate which parent has decision-making authority for the child. The mother also contends the trial court legally erred in designating both parents as “co-domiciliary parents,” rather than |6designating a single “domiciliary parent.” The mother urges that under La. R.S. 9:335, there can only be one domiciliary parent.
Of the two issues presented, we first analyze whether, under La. R.S. 9:335, there can only be one domiciliary parent. Because that issue addresses what the statute permits, resolving that issue should aid our resolution of the second issue, ie., whether the trial' court’s judgment sets forth an implementation order.'
Mindful of our civilian mandate, our analysis begins with the words of the statute itself. See La. R.S. 1:4 (“When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.”). The meaning of “domiciliary parent” derives from La. R.S. 9:335. See La. R.S. 24:177(B)(1) (“The text of a law is thé best evidence of legislative intent.”). As La. R.S. 9:335 is laid out, its first part, section (A)(1), makes the general provision for joint custody and indicates an “implementation order” is the default plan for joint custody. However, section (A)(1) also indicates an “implementation order” is not always required; there is an exception for the issuance of an “implementation order” when there, has been “good cause shown.”
Section (2)(a) then, indicates that when rendered, an implementation order “shall allocate time each parent shall have physical custody,” with the goal of joint custody being “that the child is assured of frequent and continuing contact with both parents.” Another goal of joint custody, described in section (2)(b), is that as long as it is feasible and in the child’s best interest, “physical custody of the children should be shared equally.”
*705 However, physical custody is a separate matter from legal authority and responsibility over a child. As we previously observed, “[t]he term ‘custody’ is usually broken down into two components: physical or ‘actual’ custody and legal custody Evans v. Lungrin, 97-0541, p. 19 (La.2/6/98), 708 So.2d 731, 737. Accordingly, legal authority and responsibility are addressed in the next section of La. R.S. 9:335 (section (A)(3)), which provides that an “implementation order shall allocate the legal authority and responsibility of the parents.”
A pivotal provision at issue in this case, section (B)(1), makes logistical arrangements for some of the variables that the earlier statutory provisions recognized may exist within joint custody. Because one goal of joint custody is that “physical custody .. should be shared equally” (section (A)(2)(b)), yet an implementation order is not always required (section (A)(1)), it is logical that the 'court “designate a domiciliary parent” (section (B)(1)) so the parents and child are clear as to who has legal authority and responsibility.
Indeed, the very next provision in La. R.S. 9:335, section (B)(2), provides the definition of a domiciliary parent: “The domiciliary parent is the parent with whom the child shall primarily reside...' This definition is notable for its use of the singular, ie., “the parent.” While it is true that as a general principle of statutory interpreta-, tion that, “[wjords used in the singular number include the plural” (La. R.S. 1:7), that rule does not necessarily hold true for specialized terms in the law. “Words of art and technical terms must be given their technical meaning when the law involves a technical matter.” La. C.C. art. 11[4], Not only is this a specialized area of the law, but the .definition provided excludes the possibility of having more than, one, domiciliary parent because it is logically impossible for the stipulation in La. R.S. 9:335(B)(2) that “[t]he domiciliary parent is the parent with whom the child shall primarily reside” to be met by both parents.[5] If the time of residence with one parent must be primary, there must be a parent whose time of residence is secondary.[6]
The possibility of more than one domiciliary parent is also- logically excluded by the next provision of the statute. Under section (B)(3), “unless an implementation' order provides otherwise,” the authority of singular domiciliary'parent is elevated in comparison to the non-domiciliary parent: “[t]he domiciliary parent shall have author-: ity to make all' decisions affecting the child,” but the'authority of the “domiciliary parent” can be challenged in court’by “the other parent.” Moreover, section (B)(3) *706 contains a presumption, which logic dictates can only work if there is but one domiciliary parent: “It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.” Stated differently, if there are two domiciliary parents and the implementation order does not shed light on which of them has superior authority, there is no way to ascertain which of the parents’ decisions must be “presumed” to be “in the best interests of the child.”' La. R.S. 9:335(B)(3). The court of appeal purported to resolve this problem by dictating that in a co-domiciliary arrangement, the parent with whom the child is residing at the time would have decision-making authority during the time the child resides with the parent. Hodges, 14-1575 at 8, 166 So.3d at 354. However, the appellate court’s solution could invite second-guessing, discord, and uncertainty for the child because Rmajor decisions could vacillate with each parent in a joint custody arrangement such as the one at issue here in which the child would alternate residency from week to week. For this reason, and the more fundamental reason that the apr pellate court has resorted to a solution at odds with the statutory language, we reject the proposition that there can be more than one domiciliary parent whose authority is presumed to be . in the best interests of the child. See La. C.C. art. 9 (“When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written _”).[7]
Read as a whole, therefore, we conclude the plain language of La. R.S. 9:335 manifests the legislature’s clear intent to establish a custodial system in which a child has a domiciliary parent and no more than one such parent.. The text is clear. Although each parent can share physical custody, the court can only designate a single domiciliary parent. See La. R.S. 9:335(A)(2)(b) and (B)(1); see also Evans, 97-43541 at 11, 708 So.2d at 737 (Noting that before enactment of La. R.S. 9:335, the concept of joint legal custody “involved a sharing of the responsibilities concerning the child including decisions about education, medical care, discipline and other matters relating to the upbringing of the child,” but “[wjith the enactment of Act 261 [including La. R.S. 9:335] ..., the decision-making rules have changed. Presently, 11(lwhen parties are awarded joint custody, the court must designate a domiciliary parent unless the implementation order provides otherwise, or for other good cause shown.”). The appellate court, therefore, erred in holding there can be more than one parent designated as a domiciliary parent.
The appellate court in the instant case is hardly alone in. this error. One of the reasons we granted review of this case was to resolve differing results within the appellate courts as to whether both parents *707 could be designated as domiciliary parents. The issue of whether a “co-domiciliary” designation is valid under La. R.S. 9:335 was specifically discussed in Hodges v. Hodges, 14-1575 (La.App. 1 Cir. 3/6/15), 166 So.3d 348 (the instant case); Distefano v. Distefano, 14-1318 (La.App. 1 Cir. 1/22/15), 169 So.3d 437; and Stewart v, Stewart, 11-1334 (La.App. 3 Cir. 3/7/12), 86 So.3d 148. The appellate courts in Hodges ^ Distefano, and Stewart decided that having more than one domiciliary parent was permissible. See also Smith v. Smith, 07-1163, 2008 WL 588906 (La.App. 3 Cir. 3/5/08) (unpublished), 977 So.2d 312 (table) (affirming the trial court’s decision maintaining the mother as primary domiciliary custodian, but also naming the father as “co-domiciliary” to facilitate easier access to school records and to allow him to pick up the child from school without prior notice from the mother); Lincecum v. Lincecum, 01-1522 (La.App. 3 Cir. 3/6/02), 812 So.2d 795, 798 (wherein the appellate court equated the failure of the trial court to name a domiciliary parent “to essentially be co-domiciliary parents”); Perkins v. Perkins, 99-1130 (La.App. 1 Cir. 12/28/99), 747 So.2d 785, writ denied as improvidently ■ granted, 00-0269 (La.3/24/00), 758 So.2d 141 (per curiam)[8] (wherein the appellate court 'reversed a trial court’s decision, which changed |t1a prior stipulated designation of “co-domiciliary parents” to name the mother as the sole domiciliary parent and reinstated the prior consent judgment naming the parties “co-domiciliary parents”); Remson v. Remson, 95-1951 (La.App. 1 Cir. 4/4/96), 672 So.2d 409 (wherein the appellate court first stated that the trial court for “ ‘good cause shown’ declined to name a domiciliary parent,” but thereafter stated, “We affirm the trial court’s ,order for co-domiciliary status of the parties.”).[9]
On the other hand, three appellate court decisions have expressly held that La. R.S. *708 9:335 provides no authority for a court to designate the parties as. “co'-domiciliary parents.” See Hanks v. Hanks, 13-1442, pp. 23, 29-30 (La.App. 4 Cir. 4/16/14), 140 So.3d 208, 224, 227 (rejecting an alternate recommendation from a court-appointed counselor who performed a custody evaluation and testified “that there was nothing negative about [the father] and [the mother] being designated as co-domiciliary parents, provided they could work together,” the court observed that there was no statutory authority for a designation of co-domiciliary parents); Molony v. Harris, 10-1316 (La.App. 4 Cir. 2/23/11), 60 So.3d 70 (ruling that the co-domiciliary parent “designation does not comply with the mandate of La. R.S. 9:335(B) that the court ‘shall designate a domiciliary parent.’ ”); Ketchum v. Ketchum, 39,082 (La.App. 2 Cir. 9/1/04), 882 So.2d 631 (“[W]e find no authority in the law for a designation of ‘co-domiciliary’ parents.”). Nevertheless, both the Second and Fourth Circuits have also ruled that a trial court may designate “co-domiciliary parents.” See St. Philip v. Montalbano, 12-1090 (La.App. 4 Cir. 1/9/13), 108 So.3d 277, 279 n. 3 (wherein the trial court designated the parents “co-domiciliary,” and the appellate court refused to rule on the father’s assignment of error related to the co-domiciliary status as he raised the issue for the first time on appeal, but also stating: “Although this court in Molony v. Harris ... held that it is legally erroneous to designate ‘co-domiciliary parents,’ an exception is recognized when the trial court issues a valid implementation order specifying the authority and responsibility of each parent with regard to the child. The trial court in this case issued such an order.”); Schmidt v. Schmidt, 08-0263 (La.App. 4 Cir. 2/11/09), 6 So.3d 197, writ denied, 09-0566 (La.4/3/09), 6 So.3d 779 (wherein the appellate court affirmed the trial court’s refusal to modify its prior designation of “co-domiciliary parents”); Craig v. Craig, 42,363 (La.App. 2 Cir. 5/9/07), 956 So.2d 819, writ denied, 07-1349 (La.7/27/07), 960 So.2d 64 (wherein the appellate court reversed a trial court’s decision to name the father as the - sole domiciliary parent and reinstated a prior joint custody implementation plan that included a “co-domiciliary” designation). •
Thus, the jurisprudence on the issue of whether there can only be one domiciliary parent is inconsistent. The First, 'Third, and Fifth Circuit decisions, expressly or impliedly, have determined that a “co-domiciliary” designation does notaran afoul of La. R.S. 9:335, while the Second and Fourth Circuits have handed down mixed opinions on the issue. Our decision in the instant case resolves this inconsistent jurisprudence by holding — as we find La. R.S. 9:335 unequivocally requires — that there can be only one domiciliary parent.
Our review of the jurisprudence would not be complete, however, without some further observations. The appellate court decisions that have affirmatively designated or . at least allowed the designation of co-domiciliary parents are more numerous than those that did not. We believe the numerosity of such decisions may stem from a well-intentioned, but erroneous, belief that it is necessary for a court to use the term “co-domiciliary parents” in order to provide both parents with shared legal and physical custody. Although La. R.S. 9:335(B)(1) provides that “[i]n a decree of joint custody the court shall designate a domiciliary parent,” .the legislature provided two exceptions to this mandate-that is, (1) “when there is an implementation order to the contrary” or (2) “for other good cause shown.” (Emphasis added.) In other words,’ while La. R.S. 9:335(B)(1) provides a preference for the designation of “a domiciliary parent,” a court could choose not to designate a domiciliary par *709 ent at all and, instead, to allocate authority by means of. an implementation order. See Evans, 97-0541 at 11, 708 So.2d at 737. Indeed, according to La. R.S. 9:335(A)(1), (2)(a), and (3), when joint custody is decreed and in the absence of “good cause shown,” a joint custody implementation order “shall allocate the time periods during which each parent shall have physical custody of the child”[10] and “shall allocate the leyal authority and responsibility of the parents.”[11] (Emphasis added.)
|uWe recognize that trial and family courts facing the- myriad challenges in fashioning remedies in joint custody cases need as rftany arrows in their judicial quiver as possible. Designating both parents as “co-domiciliary” parents might seem to be an alluring target for quelling an acrimonious dispute between the parents. However, any satisfaction both parties may derive from being bestowed that designation is likely to be vitiated by the legal uncertainties stemming from "its use. As previously discussed, uncertainty and confusion are the likely results of using the designation “co-domiciliary parents,” a designation which is contrary to the framework of La. R.S. 9:335.
In short, the legislature envisioned the joint custody implementation order allocating both physical and legal custody. It is therefore unnecessary and contrary to the plain language of La. R.S. 9:335 to designate both parents as “co-domiciliary parents” in order to allocate parental responsibility. By making available an implementation order, the' legislature has given courts great procedural flexibility to craft a custody arrangement on a case-by-case basis that promotes “the best interest of the child.” La. C.C. art. 131. Or, continuing with our earlier analogy, the legislature has provided a full quiver for targeting the child’s best interests, and resorting to an implement outside that legislative quiver, ie.,- a designation of “co-domiciliary parents,” is more likely to miss the mark.
We now turn to the question ■ of whether the trial court’s judgment suffices as a joint custody implementation order. The trial court signed a judgment decreeing that: the parties have joint custody of the child; the parties share equally in the physical custody of the child “on a week to week basis,” with; the parties exchanging the.child between 6:00 and 7:00 p.m. on Wednesdays; the party retrieving the child has the responsibility for his transportation; and the parties must “work together such |ifithat they equally share physical custody of [the child] during the holidays.” The judgment- also ordered that: the mother must maintain the current health insurance policy for the child; the parents are to be proportionally responsible for any uncovered medical costs, with 50.4 percent to be paid by the father and 49.6 percent to be paid by the mother; the child’s- daycare costs .are to be paid by the parent who has physical custody of the child at the time the costs are incurred; the father has the right to claim the child on his tax return in odd-numbered years and the mother has the right to do so in even-numbered years; and the father owes the mother' $107.30 per month in child support.[12]
Significantly, this is the same judgment in which the court decreed: “the parties shall be designated as ■ co-domiciliary par *710 ents.” In oral reasons, the trial court indicated:
We’ve got a two year old little boy here. Despite your problems, it sounds like you both care and love him very deeply. You have worked out an — an arrangement that sounds like it’s been working for at least a little while now. And I know it’s not going to be a long-term solution. At some point [the child] is going to be of school age. But for at least the next couple of years, the court is going to maintain joint custody, subject to a week to week plan of visitation.
[[Image here]]
I will maintain the current exchange at between 6:00 and 7:00, with the party to retrieve the child doing the transportation. I’ll designate you both as co-domiciliary parents.
[[Image here]]
If [the parties] can’t work [a holiday schedule] out, the court will set a specific holiday schedule.[13] ...
—LiS' • • •
I’d like to say this is the last time I’ll see you in court, but given the fact that [the child] is two years old, I know this plan may only work for the next couple of years, ma’am, with you living in Baton Rouge and, sir, with you living in Livingston Parish. If you aren’t able to ... work out a plan that works for [the child] when he becomes school age, the court will be happy to hear from you again and see how things are going.
As an initial matter, even though no separate “joint implementation order” was issued by the trial court, La. R.S. 9:335 does not require a particular form for the rendition of a joint custody implementation order. See, e.g., Caro v. Caro, 95-0173 (La.App. 1 Cir. 10/6/95), 671 So.2d 516, 518 (“La.R.S. 9:335 does not require a specific form be used for the implementation plan. The [custody] judgment awarded joint custody, designated a domiciliary parent, ordered a visitation and holiday schedule with set dates and venues included.... The judgment in the record qualifies as the custody order and the implementation plan. The fact that the order was not entitled ‘implementation plan,’ is of no consequence.”).
With respect to what items must be included within a joint custody implementation order, La. R.S. 9:335 expressly states: “The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents. ... The implementation order shall allocate the legal authority and responsibility of the parents.” La. R.S. 9:335(A)(2)(a) and (3) (emphasis added). Thus, La. R.S. 9:335 expressly requires *711 that a joint custody implementation order |17must contain: (1) the time periods during which each parent shall have physical custody of the child; and (2) the legal authority and responsibility of the parents. See, e.g., Angelette v. Callais, 10-2279, p. 4 (La.App. 1 Cir. 5/6/11), 68 So.3d 1122, 1125 (“The ... consent judgment awarded joint custody, ordered a physical custody and holiday custody schedule with set dates and venues included, and contained provisions for the parents’ rights and responsibilities relative to claiming [the child] for income tax purposes, maintaining health insurance on [the child],- and the payment of child support...-. The [custody] judgment qualifies as the custody order and the implementation plan.”).
While the judgment here has no formal defects and specifies time periods during which each parent shall have physical custody, the second requirement is unmet, that is, the judgment fails to “allocate the legal authority and responsibility of the parents.” La. R.S. 9:335(A)(3). Although a court is not required to issue a “joint custody implementation order” when there is “good cause shown” (La. R.S. 9:335(A)(1)), because the trial court provided a judgment that suffices as an implementation order in all aspects except allocating legal authority, it is apparent that the trial court did not find “good cause” for not issuing an implementation order. In other words, the trial court intended its judgment to serve as an 'implementation order.
As we indicated in our earlier analysis, the trial court judgment’s designation of “co-domiciliary parents” does not comport with La. R.S. 9:335. The designation does not validly “allocate the legal authority and responsibility of the parents.” La. R.S. 9:335(A)(3). Thus, we find the trial court’s judgment made in the instant case cannot suffice as a-joint custody implementation order.
. |1RCONCLUSION
We hold that La. R.S. 9:335 precludes the designation of “co-domiciliary parents” in a joint custody arrangement. It is unnecessary and contrary to the plain language of La. R.S. 9:335 to designate both parents as “co-domiciliary parents” in order to allocate parental responsibility. For example, when a court wishes, to depart from the default rule that the sole domiciliary parent has superior decision-making authority, a court can make different provisions for decision making within the joint custody implementation order.
Further, we find that La. R.S. 9:335 does not explicitly require a particular form for the rendition of a joint custody implementation order, and we hold the only mandatory, requirements for a joint custody implementation order, stated in La. R.S. 9:335 are: (1) the time periods during which each parent shall have physical custody of the child; and (2) the legal authority and responsibility of the parents. Here, we find the trial court’s judgment failed to validly allocate the legal authority and responsibility of the parents.
In conclusion, we reverse the appellate court’s decision, to the extent the appellate court upheld the trial court’s designation of “co-domiciliary parents.” We agree with the appellate court inasmuch as we find that no valid joint custody implementation order has been rendered.
Because we have corrected an error of law by the trial eourt in designating both parents as “co-domiciliary parents,” we must determine a procedure. to best resolve this case. We find the following observations instructive: *712 appellate court should make its own independent de novo review of the record. Landry v. Bellanger, 2002-1443 (La.5/20/03), 851 So.2d 943, 954; Ferrell v. Fireman’s Fund Ins. Co:, 94-1252 (La.2/20/95), 650 So.2d 742, 745; Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (La.1980). However, we have also recognized that de novo review is not the best course of action in every case. Ragas, 388 So.2d at 708. This Court explained in Ragas:
*711 Typically where ... legal errors have interdicted the fact finding process, if the record is otherwise complete, the
*712 This is not to say ... that the appellate court must find its own facts in every such case. There are cases where the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of the issues. The appellate court must itself decide whether the record is such that the court can fairly find a preponderance of the evidence from the cold record. Where a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should' be remanded for a new trial.
Wegener v. Lafayette Ins. Co., 10-0810, 10-0811, p. 19 (La.3/15/11), 60 So.3d 1220, 1233.
Here, because the trial court did' not choose one parent over the other but instead ruled that both parents should be “co-domiciliary parents,” we find that “the weight of the evidence is so nearly equal that a first-hand view of witnesses is esr sential to a' fair resolution of the issues.” See Wegener, 10-0810, 10-0811 at 19, 60 So.3d at 1233. Accordingly, we remand this matter to the trial court for a prompt hearing and determination on how joint custody should be implemented', consistent with our opinion herein, which excludes the possibility of designating both parents as “co-domiciliary parents.”
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
KNOLL, J., additionally concurs with reasons,

. A parent not granted custody or joint custody of a child is entitled to reasonable visita- *703 lion rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. La. C.C. art. 136(A).

. A child has a right to time with both parents. Accordingly, when a court-ordered schedule of visitation, custody, or time to be spent with a child has been entered, a parent shall exercise his rights to the child in accordance with the schedule unless good cause is shown. Neither parent shall interfere with the visitation, custody, or time rights of the other unless good cause is shown. La. C.C. art. 136.1.

, On the issue of parental authority, La, C.C. art. 216 provides:
A child rémains under the authority of his father and mother until his majority or emancipation.
In case of difference between the parents, the authority of the father prevails..

. Because the statute at issue (La. R.S. 9:335) is located within Title 9, Civil Code — Ancillaries, at this juncture we draw from an interpretive principle of the Civil Code, but .the same primacy of specialized meaning for "technical terms” found in La. C.C. art. 11 is also found in La. R.S. 1:3 ("Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.”).

. The existence of a statutory, definition underscores that this is a specialized area because there would be no need to define the term if it had a generally understood meaning. See La. C.C. art. 11 ("The words of a law must be given their generally prevailing meaning.”).- Parenthetically, we also note that family law is one of the recognized areas of legal specialization in. Louisiana.

.Although a goal of joint custody under La. R.S. 9:335 is that "physical custody ... should be, shared equally,” (section (A)(2)(b)), it appears a practical recognition is contained in section (B)(2) that; even under the most equitable arrangements,' the sharing of time ‘ between parents will never be exactly equal.

. According to Professor Katherine Shaw Spaht, designating "co-domiciliary parents” results from a logically flawed reading of La. R.S. 9:335. Specifically, Professor Spaht remarked:
La. R.S. 9:335(B) provides for the designation of a domiciliary parent in a joint custody order which fails to include an implementation plan as described in Paragraph A. The domiciliary parent is defined as "the parent with whom the child primarily resides.” Most joint custody orders designate a domiciliary parent and Paragraph B governs who exercises legal and physical custody of the child. By definition, however, there can be only one domiciliary parent — the parent with whom the child primarily resides, The designation of co-domiciliary parents creates an oxymoron.
Katherine Shaw Spaht, The Two “ICS" of the 2001 Louisiana Child Support Guidelines: Economics and Politics, 62 La. L.Rev. 709, 728 n. 73 (2002).

. In recalling the writ grant, this court stated: "Upon plaintiff's application, we granted cer-tiorari in this case.... After hearing oral arguments and reviewing the record of the matter, we conclude that the judgment below does not require the exercise of our supervisory authority. Accordingly, we recall our order of February 16, 2000 as improvidently granted, and deny plaintiffs application.” Perkins, 788 So.2d at 141.

. Numerous reported cases have mentioned the designation of the parties as "co-domiciliary parents,” either having been stipulated to, granted, or sought; however, the validity of “co-domiciliary parents”- under La. R.S. 9:335 was not an issue presented to the appellate courts for review and was not discussed in these cases. The following are examples from just the past several years. See, e.g., Szwak v. Szwak, 49,938 (La.App. 2 Cir. 4/15/15), 163 So.3d 911; Cole v. Cole, 13-1442 (La.App. 3 Cir. 6/4/14), 139 So.3d 1225; Koussanta v. Dozier, 14-0059 (La.App. 5 Cir. 5/21/14), 142 So.3d 202; Blanc v. Hill, 13-1961, 2014 WL 1778354 (La.App. 1 Cir. 5/2/14) (unpublished); Bond v. Bond, 13-1733 (La.App. 1 Cir. 3/24/14), 2014 WL 1203134 (unpublished), writ denied, 14-1054 (La.9/12/14), 148 So.3d 932; Pepiton v. Turner, 13-1199 (La.App. 3 Cir. 3/5/14), 134 So.3d 160; Bagwell v. Bagwell, 48,913 (La.App. 2 Cir. 1/15/14), 132 So.3d 426, writ denied, 14-0356 (La.3/14/14), 135 So.3d 608; Bush v. Bush, 13-0922 (La.App. 1 Cir. 12/27/13), 137 So.3d 49; Harvey v. Harvey, 13-0081 (La.App. 3 Cir. 6/5/13), 133 So.3d 1, writ denied, 13-1600 (La.7/22/13), 119 So.3d 596; Manuel v. Bieber, 12-1303, 2013 WL 832362 (La.App. 3 Cir. 3/6/13) (unpublished), 110 So.3d 293 (table); Thibodeaux v. Thibodeaux, 12-752 (La.App. 3 Cir. 12/5/12), 104 So.3d 768; Coleman v. Coleman, 47,080 (La.App. 2 Cir. 2/29/12), 87 So.3d 246; Hernandez v. Hernandez, 11-0526 (La.App. 5 Cir. 12/28/11), 83 So.3d 168, writ denied, 12-0271 (La.3/30/12), 85 So.3d 124; Kingston v. Kingston, 11-1629 (La.App. 1 Cir. 12/21/11), 80 So.3d 774; Westbrook v. Weibel, 11-0910 (La.App. 3 Cir. 12/7/11), 80 So.3d 683, writ denied, 12-0403 (La.3/7/12), 83 So.3d 1048; Bergeron v. Bergeron, 10-0964, 2011 WL 1938668 (La.App. 1 Cir. 5/6/11) (unpublished), 66 So.3d 77 (table),

. La. R.S. 9:335(A)(2)(a).

. La. R.S. 9:335(A)(3).

.Additional matters, related to community property were also addressed in the judgment which are not relevant to this proceeding and are not discussed herein. .

13. When the court asked, "Is there anything else?" counsel for the father indicated, "Holidays.” The court replied, “You can split the days,” and the father stated, "We can work that out.” We note that this exchange, taken together with the fact that the trial court continued the plan the parties already had in place for equal sharing of the physical custody of the child, suggests that the trial court merely gave effect to the parties’ agreement as to physical custody of the child. See La. C.C. art. 132 ("If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.”). See also Shaw v. Shaw, 30,613 (La.App. 2 Cir. 6/24/98), 714 So.2d 906, 908, writs denied, 98-2414, 98-2426 (La.11/20/98), 729 So.2d 556, 558 ("[T]he trial court determined that the existing Joint Custody Plan adopted in 1994 was not specific with respect to [the father’s] visitation rights, but that the parties had apparently worked out a schedule between themselves over the two years. The court thus treated the matter as one where there had been an agreed physical custody plan and applied the law related to consent judgments of custody — ”).