STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

HANNAH LEBLANC

VERSUS

CODY WELCH

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2017-091
HONORABLE JOEL G. DAVIS, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Candyce G. Perret, Judges.


**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**

**K. Ray Rush**
**Post Office Box 704**
**Oakdale, LA   71463**
**(318) 335-2759**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     Cody Welch

**Meredith Abrusley Guillory**
**Post Office Drawer 1114**
**Oakdale, LA   71463**
**(318) 335-9771**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     Hannah LeBlanc

**AMY, Judge.**

This case is a custody dispute concerning the parties' minor child. The trial court awarded joint custody with a shared physical custody arrangement. The mother now appeals. For the following reasons, we affirm and remand with instructions.

**Factual and Procedural Background**

Hannah LeBlanc and Cody Welch were married in Allen Parish. Together they are the mother and father, respectively, of one minor child, who was born on October 5, 2011. On March 14, 2017, Ms. LeBlanc filed a Petition for Divorce and Determination of Incidental Matters. In the petition, Ms. LeBlanc alleged that it is in the best interest of the child for the parties to be awarded joint custody, with Ms. LeBlanc being designated as the domiciliary parent and Mr. Welch having set visitation privileges. In his answer, Mr. Welch asserted a reconventional demand in which he alleged that there should be shared physical custody of the child and that the parties should be granted possession of the child for alternating three-day periods.

At a hearing, various members of the child's family testified about the child's history and the parents' schedules relating to the child. The mother testified that she takes the child to school at about 7:15 a.m. on her way to work. She explained that after school, the child rides the school bus to the maternal grandmother's home until the mother returns from work at about 5:30 – 6:00 p.m. The maternal grandmother testified that on Wednesday afternoons, she takes the child to dance lessons, while the mother takes the child to church activities on Wednesday evenings. The mother explained that she takes the child to church services on Sunday.

The mother also explained that she has another child from a previous relationship. The record indicates that the child and the maternal half-sibling have lived together since the child's birth with the exception that the half-sibling has visitation with her biological father every other weekend. The mother explained that the child and the half-sibling are "[v]ery" close to each other.

The father testified that he typically leaves for work at 5:00 a.m. and does not return until about 6:00 p.m. He explained that the child's paternal grandmother, grandfather, and great-grandmother will assist him in caring for the child when he is at work. The paternal grandmother testified that, if the father receives custody during the school week, she is willing and able to come to the father's home at 5:00 a.m. so that the child will not have to be awakened when the father leaves for work. Additionally, the paternal grandmother and the paternal aunt stated that they are willing and able to watch the child after school, as well as to assist the father generally.

Following the hearing, the trial court issued a "Judgment on Rule for Custody and Determination of Incidental Matters." In the judgment, the trial court awarded joint custody of the child with shared physical visitation according to the following custody/visitation schedule:

1. Standard Visitation:

During the school year: Father shall have the child every other Wednesday after school until Saturday morning at 10:00 a.m.; Mother shall have the child every other Saturday morning at 10:00 a.m. until Thursday morning when she drops the child off at school; Father shall have the child every other Thursday after school until Monday morning when he returns her to school; and Mother shall have the child every other Monday after school until Wednesday morning when she drops the child off at school.

2. Summer Visitation:

> During the summer months of June and July, the parties shall maintain the standard visitation rotation unless they agree to change possession of the child to alternating weeks from Tuesday to Tuesday.

Additionally, the trial court ordered that the parties alternate holidays according to the court's holiday visitation schedule. The trial court neither designated a domiciliary parent in the judgment nor allocated legal authority and responsibility for the child in a joint custody implementation order.

On appeal, Ms. LeBlanc asserts the following assignments of error:

1. The trial court disregarded the feasibility of the shared physical custody arrangement in contravention of La. R.S. 9:335(A)(2)(b).

2. The trial court committed manifest error and abused its discretion by awarding shared physical custody without considering the factors enunciated in La. C.C. art. 134. Specifically:

   a. the spiritual guidance of the child,

   b. permanence of a family unit by separating [the] minor child with her sibling,

   c. the history of the child,

   d. willingness and ability of each party to facilitate and encourage a close and continuing relationship with the other parry [sic], and

   e. the responsibility for the care and rearing of the child previously exercised by each party.

3. The trial court committed an error of law by failing to designate a domiciliary parent, allocate legal authority, or give good reason for failing to do so in accordance with La. R.S. 9:335(B).

**Discussion**

*Physical Custody*

In her first two assignments of error, the mother asserts that the trial court erred in awarding shared physical custody of the child because the custody

arrangement is neither feasible nor in the best interest of the child. We begin by noting that in child custody matters, the trial court's determinations are entitled to great weight and will not be disturbed on review absent a clear showing of abuse of discretion. *C.M.J. v. L.M.C.*, 14-1119 (La. 10/15/14), 156 So.3d 16. When joint custody is decreed, La.R.S. 9:335(A) (emphasis added) provides, in pertinent part:

> A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
>
> (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
>
> (b) *To the extent it is feasible and in the best interest of the child*, physical custody of the children should be shared equally.

In its consideration of La.R.S. 9:335(A), the fifth circuit has reiterated that "[o]nly if it can be shown that a fifty-fifty shared physical custody arrangement is feasible and in the best interest of the child can such an order be implemented." *Theriot v. Theriot*, 15-311, p. 8 (La.App. 5 Cir. 10/14/15), 177 So.3d 759, 763.

We begin by addressing the feasibility of the shared custody arrangement. The mother expresses concern that the father's work schedule will prevent him from being able to accommodate the child's educational, spiritual, and extracurricular needs. In particular, she alleges that the child will have to wake up early on school days when the father leaves for work at 5:00 a.m. and will have to be taken to a family member's house before she is transported again to school. The mother further alleges that the father will not be available to take the child to church activities and dance classes on Wednesday afternoons because he usually does not return home from work until 6:00 p.m.

4

As mentioned above, the trial court heard testimony about both parents' respective work schedules as they relate to the child. In his testimony, the father confirmed that he leaves for work at 5:00 a.m. and does not return home until 6:00 p.m. However, the child's paternal grandmother and paternal aunt testified that they are prepared to assist the father in taking care of the child when he is at work. For example, both stated that they are available to assist with the child after school. The paternal grandmother also proposed her willingness to go to the father's house in the morning to watch the child and get the child ready for school so that the child does not have to wake up at 5:00 a.m.

Similarly, the child's maternal grandmother testified that she assists the mother in caring for the child. The maternal grandmother explained that she watches the child after school and during the summer while the child's mother is working. Additionally, the maternal grandmother testified that she takes the child to dance class on Wednesday afternoons, while the child's mother stated that she takes the child to church activities on Wednesday evenings.

In oral reasons for ruling, the trial court indicated that the feasibility of custody for both the mother and the father will depend on the assistance of the child's extended family. For instance, the trial court stated: "[L]uckily each of the parents has good support staff from their parents in order to help with the custody of the child. . . . The court will grant shared custody[.]" Additionally, in directly addressing the child's grandmothers, the trial court stated: "Both parents have to work. . . . I want to thank you on behalf of the child for giving the child a good place to rest until the parents are able there to get home to take care of" the child. The trial court further indicated consideration for the feasibility of the shared

custody arrangement in terms of the child's spiritual and extracurricular activities when stating:

> [W]ith respect to the parents, if you find that this shared custody arrangement is not in the best interest of your child, then please adjust it according to the needs of your child. I know Mr. Welch, you have the child on Wednesday from when the child gets out of school until Saturday at 10:00. If you see this isn't working out for your child because of dance and because of the child going to church on Wednesday nights then please give a little bit in modifying the schedule[.]

Considering the foregoing, the record indicates that the trial court did regard the feasibility of the shared physical custody arrangement in accordance with La.R.S. 9:335(A)(2)(b). We find no clear showing of abuse of the trial court's discretion in the determination that a shared custody arrangement is feasible in light of the assistance of the child's extended family.

Because "joint custody does not mean a fifty-fifty sharing of time on the strength of feasibility alone," we next address the mother's argument that the trial court abused its discretion by awarding shared physical custody without considering the best interest of the child and certain factors enunciated in La.Civ.Code art. 134. *Shaw v. Shaw*, 30,613, p. 6 (La.App. 2 Cir. 6/24/98), 714 So.2d 906, 910, *writs denied*, 98-2414, 98-2426 (La. 11/20/98), 729 So.2d 556, 558. In oral reasons for ruling, the trial court stated:

> The court will find that it's in the best interest of the child and the court has considered all of the particular factors in deciding this, the court will grant joint custody of the child to the parties. The court will grant shared custody . . . of the child to the parents."

In particular, the mother asserts that the trial court did not consider the spiritual guidance of the child; the permanence of a family unit by separating the child and the child's half-sibling; the history of the child; the willingness and ability of each party to facilitate and encourage a close and continuing relationship with the other

6

party; and the responsibility for the care and rearing of the child previously exercised by each party.

Regarding the best interest of the child, La.Civ.Code art. 134 provides:

The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

In *Galland v. Galland*, 14-343 (La.App. 3 Cir. 11/26/14), 152 So.3d 1090, *writ denied*, 15-0319 (La. 4/17/15), 168 So.3d 404, a panel of this court explained that

the trial court is neither required to make a mechanical evaluation of the above factors nor bound to give more weight to one factor versus another. Instead, the relative weight given to each factor is left to the discretion of the trial court. *Id.* As mentioned above, the trial court's determinations in child custody matters are entitled to great weight and will not be disturbed absent a clear showing of abuse of discretion because, as explained by this court, "[t]he trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses[.]" *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365. With this standard in mind, we turn to the facts of the case.

Regarding the spiritual guidance of the child, the mother explains that she takes the child to church functions on Wednesday evenings and attends church services with the child on Sunday. She alleges that the father does not consistently attend church services with the child, "except for designated programs." In his testimony, the father stated that on the weekends that he has had the child during the separation period, he has taken the child to church services "[m]aybe a few times. . . . I'm not positive." The record indicates that the trial court did take this into account. In oral reasons for ruling, the trial court advised the parents: "If you see this isn't working out for your child . . . then please give a little bit in modifying the schedule[.]" The trial court specifically mentioned the child's Wednesday evening church activity as an example of how the parents might need to adjust the schedule a bit to accommodate the child's needs. Thus, we find that the trial court considered the child's spiritual guidance when shaping the custody arrangement.

Next, regarding the "permanence, as a family unit" factor, the mother asserts that the trial court failed to consider the family unit that has been created between the child and the child's half-sibling. In another case involving half-siblings, a panel of this court explained that "[w]hile it is true that generally, it is preferable to keep siblings together, . . . it is not required if the trial court determines that separating them would be in the best interests of the particular children." *Mills v. Hardy*, 02-1062, p. 12 (La.App. 3 Cir. 3/26/03), 842 So.2d 443, 452. *See also Daugherty v. Cromwell*, 501 So.2d 955 (La.App. 2 Cir. 1987) (affirming a custody arrangement in which the minor child would be separated from a half-sibling for nine months of the year). Here, while the trial court heard testimony about the child and the child's half-sibling being "[v]ery" close, the trial court also heard testimony that the child "loves her daddy and she wants to be with her daddy and she's all the time saying . . . where's daddy . . . and then when he's there she's just happy. She loves him." Based on the foregoing, we find no abuse of discretion by the trial court in finding that the best interest of the child lies in awarding shared physical custody, thus separating the child from the half-sibling for part of the week.

The mother next argues that the trial court failed to consider the home, school, and community history of the child. As the record indicates that the child's school and community will not change under the shared physical custody arrangement, the mother's argument instead focuses on the child's daily schedule. The mother described the child's schedule in the following manner: the mother takes the child to school in the morning on her way to work; the child rides the school bus to the maternal grandmother's house in the afternoon; and the mother returns from work between 5:45 and 6:00 p.m., at which time she takes the child to

dance lessons or church functions. She asserts that the shared physical custody arrangement will disrupt the child's life and sense of stability. As discussed above, the trial court heard testimony from the child's paternal grandmother and paternal aunt about their willingness and ability to maintain a similar schedule for the child while the father is working. We find no abuse of discretion in the trial court's determination that the shared physical custody arrangement is in the best interest of the child given the child's history.

The mother also argues that the trial court failed to consider that the father is unable to encourage a close and continuing relationship between the child and the mother. She alleges that the father has prohibited her from communicating with the child during his custodial periods and that he refused to return the child on one occasion. However, in his testimony, the father indicated that he has also had trouble communicating with the child when the child is with the mother. Regarding whether he refused to return the child to the mother, the father responded, "Not that I refused, definitely not." He testified that he "want[s] [the mother] to have her kid just as much as me." Moreover, in oral reasons for ruling, the trial court specifically cautioned the parents against the child having an "internal struggle knowing that mom doesn't like dad or dad doesn't like mom." To this end, the trial court told the parents:

> [S]ir, I hope you don't have any ill will toward the mother by virtue of my decision and ma'am I hope you don't harbor any [ill] will against the father because of my decision. In fact what you owe each other because you chose to have a child together but most importantly what you owe your child is to lay down arms and lay down any aggravations or any resentment that you may harbor against each other and try to be civil towards one another.
>
> . . . .

10

> [P]lease don't say anything disparaging about the other parent in front of the child. If you do nothing else for your child find something good to say about the other parent[.]

Accordingly, we find that the trial court did consider each parents' willingness and ability to facilitate and encourage a close and continuing relationship between the child and the other party as called for by La.Civ.Code art. 134.

Last, the mother argues that the trial court failed to consider the responsibility for the care and rearing of the child previously exercised by each party. The mother asserts that she has always been primarily responsible for the care and rearing of the child and that the trial court has placed great responsibility on the paternal grandparents for the father's custodial periods. However, the testimony indicated that the mother and father shared responsibility in caring for the child prior to their separation. Additionally, while the mother asserts that the custody arrangement places great responsibility on the paternal grandparents for the father's custodial periods, the trial court determined that both the maternal and paternal grandparents will have to assist in the child's care due to the parents' work schedules. As discussed above, the trial court addressed the child's grandmothers and stated: "Both parents have to work. . . . I want to thank you on behalf of the child for giving the child a good place to rest until the parents are able there to get home to take care of" the child. Moreover, the child's maternal and paternal grandmothers testified that they assisted in watching the child even before the parents separated. Thus, we find no abuse of discretion in the trial court's award of shared physical custody in light of what the record indicates about the responsibility for the care and rearing of the child previously exercised by each party.

11

Based on the foregoing, we find that the trial court did not abuse its discretion by concluding that shared physical custody is feasible and in the best interest of the child. Accordingly, we affirm the trial court's decision to award shared physical custody.

*Domiciliary Parent*

As noted previously, however, the trial court did not designate a domiciliary parent or allocate legal authority and responsibility in a joint custody implementation order. In her Petition for 102 Divorce and Determination of Incidental Matters, the mother asked that she be named the domiciliary parent. Before this court, she argues that the trial court committed an error of law by failing to designate a domiciliary parent, allocate legal authority, or give good reason for failing to do so in accordance with La.R.S. 9:335(B). The mother argues that, because this is a legal error and the record is otherwise complete, this court should conduct a *de novo* review of the record and ultimately name her as the domiciliary parent. In response, the father agrees that the record indicates that the trial court neither designated a domiciliary parent nor issued an implementation order allocating the legal authority and responsibility of the parents. However, he points out that in oral reasons for ruling, the trial court identified the parties as "co-parents," such that the issue should be remanded based on *Hodges v. Hodges*, 15-0585 (La. 11/23/15), 181 So.3d 700.

Once the decision to award joint custody to the parents has been reached, La.R.S. 9:335 governs a court's determination of the details of the custody arrangement. *See Hodges*, 181 So.3d 700. In pertinent part, La.R.S. 9:335 provides:

A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.

(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.

(3) The implementation order shall allocate the legal authority and responsibility of the parents.

B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.

(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.

(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

In interpreting La.R.S. 9:335, the supreme court has explained:

Although La. R.S. 9:335(B)(1) provides that "[i]n a decree of joint custody the court *shall* designate a domiciliary parent," the legislature provided two exceptions to this mandate-that is, (1) "when there is an *implementation order* to the contrary" or (2) "for other good cause shown." (Emphasis added.) In other words, while La. R.S. 9:335(B)(1) provides a preference for the designation of "a domiciliary parent," a court could choose not to designate a domiciliary parent at all and, instead, to allocate authority by means of an *implementation order*. *See Evans*, 97-0541 at 11, 708 So.2d at 737. Indeed, according to La. R.S. 9:335(A)(1), (2)(a), and (3), when joint custody is decreed and in the absence of "good cause shown," a joint custody implementation order "shall allocate the time periods during which each parent shall have *physical custody* of the child" and "shall allocate the *legal authority and responsibility* of the parents." (Emphasis added.)

13

*Hodges*, 181 So.3d at 708-09 (internal footnotes omitted).

The record indicates that the trial court did not address the issue of "good cause shown," in addition to the fact that the trial court neither designated a domiciliary parent nor allocated legal authority and responsibility in a joint custody implementation order. *See* La.R.S. 9:335. *See also Hodges*, 181 So.3d 700. In *Hodges*, after concluding that the trial court erred by designating both parents as "co-domiciliary parents," the supreme court remanded the matter, explaining that "when a view of the witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded[.]" 181 So.3d at 712 (quoting *Wegener v. Lafayette Ins. Co.*, 10-0810, 10-0811, p. 19 (La. 3/15/11), 60 So.3d 1220, 1233). We likewise find "that a first-hand view of witnesses is essential to a fair resolution" of this issue. *Id.* at 712. Accordingly, we remand to the trial court for consideration of this issue.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed insofar as it awards shared physical custody of the minor child to the mother, Hannah LeBlanc, and the father, Cody Welch. We remand to the trial court for a determination of whether a domiciliary parent should be named consistent with La.R.S. 9:335. All costs of this appeal are assessed against the appellant, Hannah LeBlanc.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**